G M A C MORTGAGE CORPORATION, Successor in Interest to Norwest Mortgage, Inc., Plaintiff and Counterdefendant-Appellant, v. LARRY W. LARSON *et al.*, Defendants and Counterplaintiffs-Appellees (First Galesburg National Bank and Trust Company *et al.*, Defendants-Counterplaintiffs).

Third District   No. 3—91—0825

Opinion filed August 13, 1992.

Guerard, Kalina & Musial, of Wheaton (John J. Pcolinski, Jr., of counsel), for appellant.

Richard A. Dahl, of Barash, Stoerzbach & Henson, of Galesburg (Barry M. Barash, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff/counterdefendant, G M A C Mortgage Corporation, appeals from a supplemental judgment awarding attorney fees to the defendants/counterplaintiffs, Larry W. Larson, Lynn G. Larson and First Galesburg National Bank & Trust Co. We reverse and remand.

On May 21, 1984, the Larsons granted a mortgage on their primary residence to secure a note evidencing a loan of $140,000 from Norwest Mortgage, Inc. The proceeds of the loan were used to pay off a $127,282.26 loan from First Galesburg National Bank & Trust Co. The balance of the loan proceeds paid various expenses and fees, and included a withholding of $9,100 representing a 6.5% loan discount.

The transaction was termed a capped one-year adjustable rate mortgage. The initial rate of interest charged was 9.875%. The note provided that on the "Change Date" a new interest rate would be determined by reference to an index (the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year). The first "Change Date" was designated June 1, 1985.

On April 17, 1985, the Larsons were notified that as of June 1, 1985, the interest rate on their loan would increase from 9.875% to 11.875%. This change resulted in an increase in their monthly payments of approximately $208. The record shows the Larsons made payments on the loan through July 8, 1985. Sometime thereafter, the mortgage was acquired by G M A C Mortgage Corporation. On March 24, 1986, GMAC filed a complaint to foreclose on the mortgage.

Subsequently, the Larsons filed a six-count counterclaim. Count I, based on common law fraud, alleged Norwest intentionally and knowingly failed to disclose to the Larsons that the initial interest rate was a discounted rate and was not based on the index. Counts II and III based on the same facts alleged violations of the Consumer Fraud and Deceptive Business Practices Act (hereinafter referred to as the Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*).

Count IV sought rescission of the transaction under section 1635(a) of the Truth in Lending Act (15 U.S.C. §1635(a) (1988)). Counts V and VI sought damages under the Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1988)) for various discrepancies in the loan documents.

A bench trial was held on April 18, 1991, and May 3, 1991. Between the two hearing dates, the Larsons filed a motion for attorney fees, expenses and costs. On May 9, 1991, the trial court entered a memorandum opinion. In the opinion, the court found the Larsons had failed to prove that Norwest intentionally acted to defraud them. However, the court found in favor of the Larsons on the remaining five counts of their counterclaim. Consequently, the court found against GMAC on the complaint to foreclose. The court awarded $1,000 in damages under the State consumer fraud actions alleged in counts II and III. The court also awarded $1,000 in damage under the Truth in Lending actions alleged in counts V and VI. The court found in favor of the Larsons on count IV and declared the transaction rescinded. GMAC was directed to file a release of the mortgage upon the receipt of $112,651 from the Larsons. The court awarded attorney fees under counts II, III, IV, V and VI of the counterclaim and stated the court would hear evidence concerning the Larsons' motion for attorney fees.

Pursuant to the memorandum opinion a judgment was entered on May 28, 1991. The judgment specifically reserved jurisdiction to determine the Larsons' reasonable attorney fees and costs. On August 26, 1991, the Larsons filed an amended motion for attorney fees, expenses and costs. The amended motion requested that the attorney fees not be computed on an hourly basis, but that the reasonable fees be found to equal 33⅓ of the "benefit" realized by the Larsons in prevailing on their counterclaim. The amended motion contained a table listing the attorneys, staff and experts who assisted in the case and the hourly rate for each person. Attached to the motion was a 24-page computer-generated statement. The statement listed specific dates, initials of the person performing the stated task, time spent on the task and a brief description of the task performed. The statement showed total hourly fees of $16,555.75 and total expenses of $770.60.

A hearing was held on the amended motion on September 23, 1991. No verbatim record was kept of this hearing; however, the trial court subsequently certified a bystander's report of proceedings. According to the bystander's report, Larry Larson testified there was no written fee agreement between himself and his attorney, Barry Barash. However, he had agreed to pay a reasonable fee at the conclusion of the proceedings.

Barash testified he was charging $150 per hour at the time he took the case, and that recently he had increased his hourly fee to $175. Barash testified he believed the fees reflected on the statement attached to the amended motion were reasonable.

Over the objection of GMAC, the trial court admitted a 1988 affidavit of Barry Barash from a case filed in the United States District Court for the Central District of Illinois. The affidavit stated Barash had extensive experience in the Truth in Lending Act. The affidavit listed 13 published appeals in which Barash was involved as counsel. The affidavit concluded with a quote from an opinion by Judge Richard Posner in a case (*In re Pine* (7th Cir. 1983), 705 F.2d 936) concerning whether Barash's claimed fee in that case was reasonable.

In a memorandum opinion dated September 25, 1991, the trial court noted the Larsons were requesting the attorney fees be based on a percentage of the benefits they received as a result of prevailing on the counterclaim. The court stated the Larsons were contending that because they had use of the loan monies for a period in excess of four years, they received a benefit of approximately $109,000. The court found it was obligated to look to the benefits derived by the Larsons, as well as the time spent on the case and the uniqueness of the case.

The court recognized that part of the hourly time recorded in the computer-generated statement was spent on the common law fraud claim on which the Larsons did not prevail. The court opined "that a portion of the time involved has to be allotted to matters on which the Defendant [sic] did not prevail; that would include the matter relating to the Fraud [sic] allegations."

The court viewed the case as very unique and involving difficult issues. The court believed the case was not an ordinary hourly rate fee case and felt obligated to "attach a degree of importance to the uniqueness of the case and the positive results to the client involved." Therefore, the court awarded $13,555 in fees based on the time spent by the attorneys and staff, plus expenses of $770. In addition, the court awarded $12,790 based on the uniqueness of the case, the special questions presented, the degree of responsibility in the management of the case and the benefits to the Larsons. From this total award of $27,115 the court subtracted $2,234.15 to take into account Rule 11 (Fed. R. Civ. P. 11) sanctions paid by GMAC in a previous attempt to remove the matter to Federal court.

A supplemental judgment awarding a total of $24,880.85 in attorney fees was filed on September 30, 1991. On October 7, 1991, a satisfaction and release of judgment was filed by GMAC. The release and

accompanying order specifically excluded the supplemental judgment awarding attorney fees to the Larsons. GMAC filed a timely appeal from the supplemental judgment.

Initially, we note numerous motions were filed with respect to the briefs in this case. Most of the outstanding motions were disposed of at or prior to oral argument, and it would appear the only remaining outstanding motion is the Larsons' motion to strike GMAC's reply brief. In any event, all outstanding motions regarding the briefs filed in this case are hereby denied.

In their appellee's brief, the Larsons argue that GMAC's satisfaction and release of judgment filed October 7, 1991, precludes further appeal on the issue of attorney fees. The Larsons contend GMAC should not be allowed to accept payment on the note and mortgage in return for release of the mortgage and continue to appeal the issue of attorney fees.

We find the Larsons' contention to be without merit in this case. For while it is generally the rule in civil cases that when a judgment has been voluntarily paid or its benefits accepted the question becomes moot (see *County of Cook v. Malysa* (1968), 39 Ill. 2d 376, 235 N.E.2d 598), in the instant case, the payment and release of judgment filed on October 7, 1991, concerned the substantive underlying dispute between the parties and specifically exempted the supplemental judgment from the release. The cases cited by the Larsons are readily distinguishable in that they involve appeals from the same judgment with which the appealing party had already complied. In this case, the supplemental judgment is separate and distinct from the judgment rendered in the underlying dispute. As best we can determine, GMAC has not paid the award of attorney fees. We find a controversy continues to exist with respect to the independent supplemental judgment and therefore have jurisdiction to reach the merits of the issues raised on appeal.

On appeal, GMAC contends the trial court improperly awarded what amounts to a contingent-like attorney fee to the Larsons.

At oral argument, we note the Larsons characterized the total award of attorney fees as representing 25% of the benefit realized by them. It is apparent the trial court granted a contingent fee award, and we find this was improper given that no written contingent fee agreement existed between the Larsons and their attorney. (See 134 Ill. 2d R. 1.5.) In addition, we find the Larsons' reliance on general pronouncement of law found in *Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 568 N.E.2d 503, irrelevant. In *Blankenship*, a written contingent fee contract existed. The only ques-

tion before the court was whether an award of fees equivalent to the terms of the contract was reasonable.

■■ In sum, the supplemental judgment must be reversed and the cause remanded for a new hearing on the issue of attorney fees. A new hearing is required because this court also finds error in the use of the "benefit" allegedly derived by the Larsons as the basis for calculating the attorney fees.

The trial court's opinion specifically awarded $12,790 in additional fees based in part on the benefit derived by the Larsons. The court stated the Larsons were maintaining that they derived a benefit of $109,000 for the use of the loan proceeds for a period in excess of four years. It appears the trial court took this figure from the Larsons' amended motion. In actuality, the $109,651 figure put forward in the Larsons' amended motion was the difference between the $112,651 the Larsons were ordered to pay GMAC and the alleged $3,000 damage award received based on the Consumer Fraud and Truth in Lending Acts. How this figure related to the alleged benefit derived is unclear.

In any event, according to the amended motion the benefit derived was calculated using a formula based on the use of $140,000 for a period of 2,689 days (May 21, 1984, to October 1, 1991) multiplied by 10% and divided by 365. This yielded a contended savings of $103,140. Added to this was the $3,000 in damages awarded, for a contended total benefit of $106,140.

According to the Larsons' theory, the benefit they realized resulted from the use of the loan proceeds from the date of the loan through the date they paid GMAC pursuant to the May 28, 1991, judgment. They cite no authority for this theory or the formula utilized in calculating the alleged benefit.

This court is not contending the Larsons did not benefit from the use of the loan proceeds during the 5½ years of litigation. However, we find this formulation too uncertain given that the realized benefit is a function of the delay in the foreclosure proceedings, and there is also the difficulty of assessing whether the defendants in the proceedings (in this case the Larsons) are responsible for the delay and to what extent. It would be inappropriate to award attorney fees based on a formula that would in actuality award an attorney for delaying the case as long as possible. In the instant case, a number of actions by the Larsons delayed the outcome of GMAC's foreclosure action, including the dismissal of the original complaint. So that while the Larsons were able to have the benefit of the use of the loan monies, this partly resulted from their own litigation strategy. In sum, we do not

believe the "benefit" theory espoused by the Larsons is a viable theory under which damages can be assessed.

In any event, even though a benefit may have been realized by the Larsons, in the instant case that benefit was not calculated in a reasonable manner. The record fails to support a finding that the Larsons had use of the entire $140,000 for in excess of seven years (2,689 days). The record clearly reflects that some portion of the loan was repaid in the first year. Also, as discussed above, there was no attempt to take into account delays attributable to actions by the Larsons in the course of litigation which necessarily lengthened the proceedings.

In sum, the "benefit" theory advanced by the Larsons was unreliable, incorrectly calculated in the instant case and to the extent relied on by the trial court erroneous.

Because the issues may arise on remand we address the other contentions raised on appeal by GMAC.

■■ GMAC argues the trial court erred in admitting the affidavit of Barry Barash. We find the affidavit was probably admissible but of little relevance. Barash could have testified concerning his involvement in the cases listed in the affidavit. The quote from Judge Posner's opinion was inappropriate; however, it is derived from a published opinion readily available to the court. As far as reflecting the expertise of Barash or the reasonableness of his fees, the *Pine* case was nine years old at the time of the hearing in the instant matter and therefore of little relevance.

GMAC argues the time spent on the various causes of action advanced in the counterclaim were not sufficiently delineated.

It is incumbent upon a party petitioning for attorney fees to submit sufficient evidence to support the claim. (*In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 506 N.E.2d 1000.) Where a party can recover attorney fees for some of the claims brought but not on others, the moving party must differentiate what part of the attorney's work was spent on the claims for which recovery is allowed. See *Chesrow v. Du Page Auto Brokers, Inc.* (1990), 200 Ill. App. 3d 72, 557 N.E.2d 1301.

■■ In the instant case, the Larsons did not prevail on their common law fraud claim, for which they would not have been able to recover attorney fees in any event. The trial court made an ambiguous reference to this fact. Based on the hourly fees, the court awarded $13,555 in attorney fees. The statement attached to the amended motion listed a total of $16,555 in hourly fees. The trial court failed to disclose the basis for its award of $13,555. On remand, an attempt

must be made to show how much of the attorney's time was spent on count I of the counterclaim, and the trial court must state specifically how the award, if any, reflects the fact the Larsons did not prevail on this count.

In addition, the factors to be considered in awarding fees under the Consumer Fraud Act and the Truth in Lending Act differ in some respects. (See *Kleidon v. Rizza Chevrolet, Inc.* (1988), 173 Ill. App. 3d 116, 527 N.E.2d 374 (six factors); *Barber v. Kimbrell's, Inc.* (4th Cir. 1978), 577 F.2d 216 (12 factors).) On remand, these factors should be reflected in the evidence presented and the decision of the trial court.

For the foregoing reasons, the supplemental judgment of the circuit court of Knox County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

GORMAN and HAASE, JJ., concur.