Filed 11/17/09          NO. 4-08-0378

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ford County |
| STYCK'S BODY SHOP, INC., | ) | Nos. 00LM3 |
| Defendant-Appellant. | ) | 01LM7 |
| | ) | |
| | ) | Honorable |
| | ) | Stephen R. Pacey, |
| | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In April 2001, plaintiff, Country Mutual Insurance Company (Country), filed a complaint in replevin, asserting defendant, Styck's Body Shop, Inc. (Body Shop), unlawfully possessed several of its vehicles. Specifically, Country contended Body Shop refused to release the vehicles from storage to Country because Country refused to pay a $50 processing fee Body Shop had recently begun charging. In December 2002, Body Shop filed a counterclaim, seeking damages for towing, assessment, storage, and repair services it provided Country. Both Country and Body Shop filed amended claims prior to trial.

Following an August 2003 trial, a jury returned a verdict against Country, awarding Body Shop (1) various sums for towing and storage on 25 out of the 26 vehicles at issue, totaling $11,837.50, and (2) the $50 processing fee for all 26

vehicles.  Thereafter, the trial court awarded Body Shop $16,759.55 in attorney fees and costs.

Body Shop appeals, arguing the trial court erred by (1) limiting its damages for storage fees to the number of days Body Shop stored each vehicle prior to receiving Country's demand for possession and offer of payment (less the $50 processing fee), (2) refusing to instruct the jury on the judicially admitted fact that Body Shop's $20-per-day storage fee was reasonable, and (3) using an improper legal standard when it limited Body Shop's request for attorney fees and costs.  We affirm as modified and remand to the trial court with directions to award additional damages to Body Shop in the amount of $37,900 in storage fees for what the parties refer to as the Miller and Landau vehicles.

I. BACKGROUND

A. General Overview

The evidence the parties presented at the August 2003 trial and other evidentiary materials the parties submitted at the summary-judgment proceedings established the following. Between 1999 and 2003, Body Shop was engaged in the business of vehicle collision repair and towing.  During that same period, Country sold automobile insurance policies throughout Illinois.

Generally, in the event of an automobile accident involving a vehicle insured by Country, Body Shop or another towing company would be called to the scene of the accident by

either law-enforcement personnel or a private party to (1) clean up debris, (2) tow the vehicle back to its place of business, (3) process the vehicle, and (4) store the vehicle. Country then would decide whether to repair the vehicle or declare it a total loss. Traditionally, Body Shop billed for hookup, removal, towing, and storage. Body Shop's fee for hookup, removal, and towing varied, based on the circumstances of each particular call. Body Shop charged $20 per day for vehicle storage, which (1) was standard in the industry and (2) Country consistently paid.

In the event Country deemed a policyholder's vehicle a "total loss" as a result of an accident, Country (1) paid the policyholder for the vehicle, (2) took an assignment of title to the vehicle, (3) applied for a salvage title, (4) paid the towing service to release the vehicle from its storage, and (5) disposed of the vehicle for the value of its parts. Sometime in 1999, Body Shop began assessing a $50 "processing fee" in addition to the charges it previously assessed for each total-loss vehicle towed back to its place of business and stored.

Between 1999 and 2002, Body Shop towed 26 vehicles insured by Country, which Country later deemed "total losses." Of these tow requests, 5 were made by private parties, and 21 were made by various law-enforcement agencies. Country refused to pay the additional $50 processing fee on these 26 vehicles.

Country requested the return of 24 of these vehicles and offered to pay all of the previously accrued charges, save the $50 processing fee. Country would normally pay storage charges up to the day it picked up a vehicle but would not pay a storage charge for a day on which some action of a body shop prevented Country from retrieving the vehicle. However, Body Shop refused to honor Country's demand for possession of a vehicle until Country paid the $50 processing fee for that vehicle. Robert Styck testified he would not have authorized the release of a vehicle, even if Country had physically tendered payment of all undisputed charges for the vehicle, without payment of the $50 processing fee for that vehicle. Styck's testimony was borne out by his treatment of what the parties referred to as the Jordan vehicle. Country gave Body Shop a check for all of the accrued charges absent the processing fee, Body Shop cashed the check, but Body Shop still refused to release the vehicle.

## B. Procedural History

In February 2000, Country filed a complaint in replevin, asserting Body Shop unlawfully possessed the Jordan vehicle. In April 2001, Country filed a separate complaint in replevin, asserting Body Shop unlawfully possessed several other vehicles to which Country held title. Country later amended its complaint to add additional vehicles. The trial court later

- 4 -

consolidated these two claims. In total, Country alleged Body Shop unlawfully possessed 26 of its vehicles because Country either paid or offered to pay its bills for the vehicles in one form or another less the $50 processing fees--offers Body Shop refused to accept.

In September 2002, Body Shop filed its answer to Country's complaint in replevin, arguing the sums Country "tender[ed]" for those vehicles were insufficient, given the amount Country owed for the work, storage, and processing fees that had accrued to that point. Accordingly, Body Shop asserted, in pertinent part, the affirmative defense that it had a "possessory lien interest superior to that claimed by [Country]."

In December 2002, Body Shop filed a counterclaim, arguing Country owed it approximately $300,000 pursuant to a bailment created when Body Shop towed the vehicles to its place of business for assessment, storage, and repair. In April 2003, Body Shop amended its counterclaim, separating the vehicles into "private tow" and "police tow" vehicles and asserting Country owed it (1) $50 in processing fees for each vehicle and (2) $20 per day for storage since the date each vehicle was towed to its place of business.

In May 2003, Country filed a motion for partial summary judgment, asserting Body Shop could not raise a genuine issue of material fact for jury determination on the issues regarding its

right to recover (1) damages for storage charges for the days after Country demanded possession of a vehicle and (2) attorney fees.

In July 2003, Body Shop replied, denying Country's right to possession of the vehicles and asserting affirmative defenses based on (1) possessory lien rights under the Labor and Storage Lien Act (770 ILCS 45/1 through 8 (West 2000)) and the Labor and Storage Lien (Small Amount) Act (770 ILCS 50/1 through 6 (West 2000)), (2) section 4-203 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/4-203 (West 2000)), and (3) common-law artisan's liens. Later that month, Body Shop amended its counterclaim to include the Jordan vehicle.

Thereafter, the trial court ruled on Country's motion for partial summary judgment, finding Body Shop could not (1) claim storage charges for any vehicle for the days Body Shop retained a vehicle after Country offered to pay the uncontested charges and demanded the vehicle's return or (2) recover attorney fees for its attorney's efforts involving the private tow vehicles.

The trial court stated in part:

"[Country's] [m]otion for [s]ummary [j]udgment is allowed to the extent that [Body Shop] has no claim for storage charges for any vehicles at issue in the [a]mended

[c]omplaint or in [the filing for the Jordan vehicle] from and after the respective dates [Body Shop] admits demand for possession and tender of uncontested charges was made by [Country]."

In August 2003, Country filed a second amended complaint in replevin, adding the specific dates and offers it made on the 25 vehicles it claimed Body Shop unlawfully possessed. (The other vehicle was the Jordan vehicle.) Later that month, Body Shop filed its second amended counterclaim, again asserting (1) 21 of the vehicles were police tows and (2) 5 vehicles were private tows for which Country failed to pay Body Shop the full amount of its fees, including the $20-per-day storage fee and the $50 processing fee. In its answer to Body Shop's second amended counterclaim, Country stated the $20-per-day storage fee was usual and customary. However, Country denied daily storage charges were properly accruing against the vehicles Body Shop refused to release. Country also denied Body Shop was entitled to collect a $50 processing fee for any of the 26 vehicles. Country denied Body Shop was entitled to "storage charges at the rate of $20.00 per day from the date of [Body Shop's] possession of each said vehicle to the date of judgment."

At the August 2003 trial, the parties presented, in pertinent part, evidence in the form of (1) testimony as to (a)

the industry billing standards and (b) when certain payments were offered and accepted, (2) bills reflecting the fees Body Shop alleged Country had incurred, and (3) letters and checks reflecting the exchanges between the parties. During its closing argument, Country presented a demonstrative exhibit reflecting, in part, the date each vehicle arrived at Body Shop and the date the offer and demand was made for each vehicle. Pursuant to a pretrial ruling and because no evidence showed that an offer or demand had ever been made on what the parties called the Miller and Landau vehicles, Country's exhibit included a 13-day storage calculation for those 2 vehicles, which was based on the average number of days the remaining 24 vehicles were stored prior to the date of Country's offer and demand for possession.

Following the parties' trial, the jury found in favor of Body Shop, awarding it damages of (1) $3,577.50 for hookup, removal, and towing; (2) $6,960 for storage; and (3) $1,300 for processing fees.

### C. Attorney Fees and Expenses

In November 2003, Body Shop filed a motion for attorney fees and expenses, requesting approximately $70,000 for fees, costs, and expenses. In August 2006, following numerous delays by both parties in filing their fee petitions and responses thereto, the trial court entered the following findings as to attorney fees, costs, and expenses:

"The allocations of time to the [Body Shop's] counterclaim and/or police tows are arbitrary.

Attorney Patrick McGuire, [Body Shop's] trade association counsel, did most of the work on the counterclaim prior to March 2003.

Deposition expenses, witness fees, and office staff/paralegal time do not appear to be part of 'collection costs' as defined by the statute in question.

Some of [a]ttorney Rodeen's time is billed at $200 per hour and some of [a]ttorney Rodeen's and [a]ttorney Lanto's time is not discounted (per their agreement with [Body Shop]) for the entries when they were both working on the case.

Reasonable fees for *** Rodeen *** are $9,948.75; reasonable fees for *** Lanto are $6,810.00."

In September 2006, Body Shop filed a motion for attorney fees posttrial and on appeal, which the trial court later denied.

This appeal followed.

## II. ANALYSIS

- 9 -

## A. Body Shop's Claim That the Trial
## Court Erred by Limiting Its Damages

The trial court, in ruling on Country's motion for summary judgment, stated Body Shop had "no claim for storage charges for any vehicles at issue in the [a]mended [c]omplaint or in [No.] 00-LM-3 from and after the respective dates [Body Shop] admits demand for possession and tender of uncontested charges was made by [Country]." Body Shop argues the court erred by limiting its damages. Specifically, Body Shop contends:

"Since Country never made any 'legal tender' as to any of the [26] vehicles *** [Body Shop's] lawful right to continued possession of the vehicles was never terminated through the date of trial and [Body Shop] was, and is[,] therefore entitled to judgment for the full $475,783.50 for all charges and storage on all [26] vehicles through [August 25, 2003]."

We disagree with Body Shop.

Body Shop appears to believe because it had the right to retain a vehicle pursuant to its lien, it also had the right to continue charging storage fees on that vehicle. This is incorrect. Regardless of whether Body Shop had the right to retain possession of a vehicle pursuant to a claimed lien after Country demanded the vehicle's return, established Illinois law

- 10 -

does not allow Body Shop a legal monetary remedy for the days it continued to retain the vehicle, regardless of the legal theory or process it used in its attempt to collect those daily storage fees.  See Weiland Tool & Manufacturing Co. v. Whitney, 44 Ill. 2d 105, 118, 251 N.E.2d 242, 249 (1969); Navistar Financial Corp. v. Allen's Corner Garage & Towing Service Inc., 153 Ill. App. 3d 574, 578-79, 505 N.E.2d 1321, 1324 (1987); Johnson v. Throop Street Auto & Wagon Co., 232 Ill. App. 513, 515 (1924); see also Consolidated Bearings Co. v. Ehret-Krohn Corp., 913 F.2d 1224, 1233 (7th Cir. 1990).

The dissent argues the case sub judice is distinguishable in part from Weiland, Navistar, and Johnson because "storage of the vehicle was not the nature of the parties' original agreement" in those cases.  Slip op. at 28. First, as discussed later in more detail, storage was the nature of the parties' original agreement in Johnson (see Johnson, 232 Ill. App. at 514).  Second, even if all of those cases involved situations where something other than storage was the original nature of the parties' agreements, we fail to see the relevance of this distinction as the original nature of the parties' agreement in the instant case was towing, not storage.  Storage of the vehicles was only incidental to the towing of the vehicles.

Our supreme court's decision in Weiland stands for the

proposition that after the owner of property (other than real property) demands the return of that property from a bailee, the bailee is not allowed both (1) to continue to retain possession of the property pursuant to a lien on the property and (2) charge storage fees for holding the property for the period of time after the demand was made. Weiland, 44 Ill. 2d at 118, 251 N.E.2d at 249.

In reaching its decision, our supreme court relied on Johnson. In Johnson, the defendant public garage-automobile repair shop's first contact with the vehicle at issue was for storage, not automobile repairs. Johnson, 232 Ill. App. at 514. According to the opinion in Johnson:

"Plaintiff's chauffeur, with plaintiff's consent, stored the truck[,] when not in use[,] in defendant's garage during the major portion of the month of December, 1922, and all of the month of January, 1923. During December, 1922, defendant, at the chauffeur's request, twice made repairs on the truck, furnishing material and performing

labor thereon." Johnson, 232 Ill.

App. at 514.

On January 25, 1923, Johnson went to the defendant's place of business, paid the storage due for December and January, and also paid for the materials used in the repairs. Johnson, 232 Ill. App. at 514-15. However, he refused to pay the $17.25 labor charge for the repairs. Johnson, 232 Ill. App. at 515. As a result, the defendant refused to return the vehicle. Johnson, 232 Ill. App. at 515. On January 31, 1923, Johnson made a written demand for possession of the vehicle. Johnson, 232 Ill. App. at 515.

On April 28, 1923, Johnson filed an action in replevin to recover the vehicle. Johnson, 232 Ill. App. at 513. The trial court found the plaintiff had a right to possession of the truck but that it had rightfully been held by the defendant for the payment of $62.25. Johnson, 232 Ill. App. at 515. The $62.25 was the total of the $17.25 labor charge for the repairs and a $15-per-month storage charge for the months of February, March, and April (the period of

time defendant held onto the vehicles after the plaintiff had demanded possession on January 31, 1923). *Johnson*, 232 Ill. App. at 515. The appellate court found the defendant was entitled to $17.25 for the labor but not the $45 in storage fees for February, March, and April. *Johnson*, 232 Ill. App. at 515. The appellate court concluded:

"After January 31, 1923 [(the date Johnson demanded possession)], the truck was not stored in defendant's garage at plaintiff's request[, even though it had been stored in defendant's garage at plaintiff's request prior to the demand being made], but was kept there by defendant contrary to plaintiff's written demand for its return, and solely by virtue of defendant's claimed lien for $17.25 for said labor performed thereon. If defendant chose to insist upon its right of retainer, given by the law,

- 14 -

and suffer the inconvenience of having a portion of the floor space of its garage taken up by the truck, this was its privilege, but in exercising said right of retainer we do not think that it had any authority under the law to add to the debt any charge for storage during the period the truck was so retained."  Johnson, 232 Ill. App. at 515.

The same reasoning applied by the court in Johnson applies in the case sub judice.

After Body Shop refused Country's demand for possession of a vehicle, Body Shop was no longer storing that vehicle on Country's behalf.  Instead, at that point, it was retaining that vehicle pursuant to a lien in an effort to collect a debt it believed it was owed.  In other words, it was retaining the vehicle solely for its own benefit.

The dissent states "[t]he majority concludes that under Johnson, Weiland, and Navistar an offer and demand amount to tender when, as here, the storage fees were incurred for the benefit of the lienholder."  Slip op. at 28.  The dissent

- 15 -

misinterprets our holding.  We hold Country did not need to make a proper legal tender in addition to a demand for possession to cut off additional storage fees.  As stated earlier, the demand for possession of a vehicle alone cut off Body Shop's right to continue charging storage fees for the days it retained that vehicle after Country's demand.

Theoretically, the defendants in <u>Johnson</u> and the case at bar could have (1) stored other vehicles in the spots being occupied by the vehicles they retained pursuant to their lien rights and (2) earned storage fees on those other vehicles.  However, it was Body Shop's choice, after Country demanded possession of a vehicle, as it was the choice of the defendant garage in <u>Johnson</u>, after the plaintiff in that case demanded possession of his vehicle, not to return the vehicle and instead suffer the inconvenience of having part of its floor space occupied by insisting upon its right of retainer.  As a result, Body Shop, like the defendant in <u>Johnson</u>, is not entitled to storage fees for the days it retained a vehicle after Country demanded its return as a matter of law, regardless of whether it is

seeking those damages pursuant to an affirmative defense or a counterclaim.

As our supreme court held in Weiland, after a bailor has demanded the return of his or its property and the bailee refuses to release the property because of a lien, the bailee is no longer storing the property for the benefit of the bailor but instead for its own purposes, i.e., securing payment for the services it rendered. Weiland, 44 Ill. 2d at 118, 251 N.E.2d at 249; see also Navistar, 153 Ill. App. 3d at 578, 505 N.E.2d at 1324 ("In the present case, defendant did not keep the truck on its lot for the benefit of plaintiff, but did so only to preserve its lien rights"); Consolidated Bearings Co., 913 F.2d at 1233 ("Where a bailee retains the bailor's property to protect its own interests rather than those of the bailor, it cannot claim compensation from the bailor").

As part of its argument that its storage fees should not have been limited, Body Shop contends the trial court misconstrued the $2,000 limitation under section 4-203(g) of the Vehicle Code (625 ILCS 5/4-203(g) (West 2000)). Body Shop asserts its counterclaim for damages should not have been limited to $2,000 because its counterclaim was a separate claim to recover damages outside of the lien statute. However, the court did not impose the statutory lien limitation of $2,000. The court only cut off Body Shop's right to storage fees after

Country demanded possession of a vehicle. The storage fees for the days preceding the demand and the other towing fees just happened to be less than $2,000 per vehicle at the point Country's demands were made.

Body Shop argues as if it had no choice but to retain possession of the vehicles. This is clearly incorrect. Body Shop could have released the vehicles to Country and sued Country for the disputed charges. However, Body Shop chose to retain possession of the vehicles pursuant to its liens to secure payment for its services. While this was a legally legitimate course of action, it was not a practical one considering (1) Body Shop did not need to worry about Country being "judgment proof" and (2) the small amount of money (both disputed and undisputed) at issue when Country demanded the return of its vehicles.

We do agree with Body Shop the trial court erred in its treatment of the Miller and Landau vehicles. Both Body Shop and Country agree that Country never made a demand for the return of either of these vehicles. However, the court allowed Country to argue to the jury that it should only award Body Shop damages for 13 days of storage since this was the average number of days the other 24 vehicles were held before Country made a demand for their possession. The court erred in the way it limited the amount of storage fees Body Shop could claim for those two vehicles. The court recognized its ruling was arbitrary. We

agree and also find its ruling erroneous.

The correct cutoff date for the accrual of storage fees for these two vehicles was August 22, 2003, the date Body Shop was served with Country's second amended complaint in replevin. In that second amended complaint in replevin, Country asked the trial court to require Body Shop to return these two vehicles to Country. At that point, Body Shop was placed on notice it was no longer storing these two vehicles for Country's benefit. The complaint in replevin served as a demand for the return of the vehicles named in the complaint.

Country never informed Body Shop it no longer wanted Body Shop to store these two vehicles until it served Body Shop with the second amended complaint in replevin. Thus, Body Shop is entitled to a $20-per-day storage fee, which the parties agreed was a reasonable storage fee, for the period of December 11, 2000, to August 22, 2003, for the Miller vehicle and the period of February 24, 2001, to August 22, 2003, for the Landau vehicle.

For the sake of clarity, our opinion does not mean someone can simply make a demand for possession of a vehicle, never pick up the vehicle, and deny responsibility for storage fees for the days subsequent to the demand. Only where a demand for possession is made and the lienholder refuses to release the property, as Body Shop did in this case, is the lienholder

prevented from claiming fees which accrue following the demand.

The dissent's reasoning with regard to storage fees is inconsistent. The dissent first states only a proper legal tender should cut off the accrual of storage fees. Slip op. at 28. However, the dissent then states the service of a complaint in replevin should cut off storage fees, even though it is not accompanied by a proper legal tender. Slip op. at 33-34. The dissent recognizes "selecting this point may seem somewhat arbitrary" for cutting off the accrual of storage fees. Slip op. at 34.

The majority's reasoning is not arbitrary. Once a demand for possession is made, whether by a complaint in replevin or otherwise, and the lienholder refuses to turn over the property, the lienholder can no longer continue to accrue daily storage fees for that property.

### B. Body Shop's Claim the Trial Court Erred by Refusing To Instruct the Jury Its $20-Per-Day Storage Fee Was Reasonable

Body Shop next argues the trial court erred by refusing to instruct the jury that its $20-per-day storage fee was reasonable and that the parties agreed the fee was reasonable. We disagree.

Whether to give a particular jury instruction is within the trial court's discretion, and a reviewing court will not disturb its decision absent an abuse of that discretion. <u>Myers</u>

- 20 -

v. Heritage Enterprises, Inc., 354 Ill. App. 3d 241, 245, 820 N.E.2d 604, 608 (2004).  Reversal is only warranted when the jury instructions have misled the jury and resulted in prejudice. Myers, 354 Ill. App. 3d at 245, 820 N.E.2d at 608.

In this case, both parties agreed Body Shop's $20-per-day storage fee was reasonable.  Moreover, both parties presented evidence at trial that Body Shop's $20-per-day storage fee was reasonable.  In fact, the exhibit Country used during closing argument included the $20-per-day figure to calculate damages. Perhaps most significantly, the jury awarded Body Shop damages for storage fees in $20 increments.

Given the record and the jury's verdict reveal the jury understood the parties agreed the $20-per-day storage fee was reasonable, we conclude the trial court did not abuse its discretion by not instructing the jury the $20-per-day storage fee was reasonable.  Further, Body Shop suffered no prejudice from the court's failure to give this instruction.

### C. Body Shop's Claim the Trial Court Erred by Using the Improper Legal Standard When It Awarded Body Shop Attorney Fees and Costs

Body Shop next argues the trial court erred by using an improper legal standard when it limited Body Shop's request for attorney fees and costs.  Country argues the trial court did not abuse its discretion.

In general, Illinois courts follow the "American Rule,"

- 21 -

which provides each party must bear its own attorney fees and costs, absent statutory authority or a contractual agreement. McNiff v. Mazda Motor of America, Inc., 384 Ill. App. 3d 401, 404, 892 N.E.2d 598, 602 (2008). However, when a statute authorizes an award of attorney fees and costs, the court may award such fees and costs if they are reasonable. Career Concepts, Inc. v. Synergy, Inc., 372 Ill. App. 3d 395, 405, 865 N.E.2d 385, 394 (2007). The trial court's decision to award attorney fees is a matter within its sound discretion, which a reviewing court will not disturb absent an abuse of that discretion. McNiff, 384 Ill. App. 3d at 404, 892 N.E.2d at 602.

Section 4-204(d) of the Vehicle Code (625 ILCS 5/4-204(d) (West 2000)) authorizes release of police tow vehicles "upon payment of applicable removal, towing, storage, and processing charges and collection costs." Section 1-111.3 of the Vehicle Code (625 ILCS 5/1-111.3 (West 2000)) states "[c]ollection costs consist of reasonable costs incurred in locating the owner, lienholder, or other legally entitled persons, and demanding payment, together with court costs and reasonable attorney's fees as determined by the court." (Emphasis added.)

In this case, the trial court properly recognized that "collection costs" under section 4-204(d) of the Vehicle Code include attorney fees and court costs, but not deposition expenses, witness fees, or office staff time. After reviewing

- 22 -

the invoices and numerous fee petitions, the court found Body Shop's allocation of its billable hours to its counterclaim and police tow vehicles to be arbitrary. The court also found the attorneys had not discounted their time pursuant to their agreement with Body Shop for the entries when they were both working on the case. Thus, the court found reasonable fees and costs were $9,948.75 for attorney Rodeen and $6,810.00 for attorney Lanto.

As a general rule, in cases involving multiple claims where some claims are filed pursuant to statutes that allow for attorney fees and others not, an attorney fee petition must distinguish between the hours spent on the statutory fee-shifting claims and the other claims. G M A C Mortgage Corp. v. Larson, 232 Ill. App. 3d 697, 703, 597 N.E.2d 1245, 1250 (1992); Rubin v. Marshall Field & Co., 232 Ill. App. 3d 522, 534, 597 N.E.2d 688, 696 (1992). However, Body Shop contends, although the Vehicle Code limits recovery for attorney fees and costs to police tow vehicles, the trial court should have used the "common core" analysis to award its attorney fees and costs for all the legal work billed. Body Shop cites Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983), among other cases as support for its argument. Neither Body Shop nor Country cited any decisions from this court on this issue.

Even though the trial court rejected Body Shop's

argument that the "common core of facts" doctrine should apply, we need not go into a lengthy discussion of whether the trial court was correct because of the circumstances of this case. The trial court awarded a combined $16,758.75 in attorney fees to Body Shop's attorneys. This award would have been reasonable even applying the "common core of facts" doctrine.

In Hensley, the United States Supreme Court stated trial courts should look at the number of hours reasonably expended on the case multiplied by a reasonable hourly rate in determining attorney fee awards. Hensley, 461 U.S. at 433, 76 L. Ed. 2d at 50, 103 S. Ct. at 1939. However, the Court said this does not end the inquiry because the trial courts should look to other factors that might cause the trial court to adjust the fee either upward or downward. Hensley, 461 U.S. at 434, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940. One of these factors is the result the plaintiff obtained. Hensley, 461 U.S. at 434, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940.

According to the Court, this factor is very important when the plaintiff only prevailed on some of his claims. In that situation two questions must be answered. Hensley, 461 U.S. at 434, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940. First, were the unsuccessful claims related to the successful claims? Hensley, 461 U.S. at 434, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940. Second, based on the level of success achieved, were the "hours

reasonably expended a satisfactory basis for making a fee award?" Hensley, 461 U.S. at 434, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940.

The Court stated in some cases a plaintiff's claims for relief will all involve a common core of facts or will be based on related legal theories.  In those situations, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  Hensley, 461 U.S. at 435, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940.  In those cases, according to the Court, the court awarding fees "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Hensley, 461 U.S. at 435, 76 L. Ed. 2d at 51-52, 103 S. Ct. at 1940.  The Court stated if a plaintiff obtained excellent results, his attorney should receive a fully compensatory fee.  However, according to the Court:

"If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not

authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. *Again, the most critical factor is the degree of success obtained*." (Emphases added.) Hensley, 461 U.S. at 436, 76 L. Ed. 2d at 52, 103 S. Ct. at 1941.

Country and Body Shop agreed the primary issue in this case was whether Body Shop was entitled to a $50 processing fee on the 26 vehicles. However, instead of simply claiming $1,300 in damages for these processing fees, Body Shop incorrectly claimed it was entitled to nearly $500,000 in storage fees from Country.

While Body Shop succeeded in part, the results it achieved were minimal. Body Shop sought damages of over $475,000. The jury awarded Body Shop $11,837.50. Most of this award was not disputed by Country either before or during the trial. Even after this court's finding Body Shop is entitled to $19,700 in storage fees for the Miller vehicle and $18,200 for the Landau vehicle, Body Shop still achieved minimal results compared to what it was seeking. The trial court awarded Body Shop $16,758.65 in attorney fees, which was more than reasonable based on the facts and circumstances in this case.

As for Body Shop's request for posttrial and appellate attorney fees, the trial court stated in its April 21, 2008, order:

> "[Body Shop's] [m]otion for [a]ttorney [f]ees [p]ost-[t]rial and on [a]ppeal [(1)] cites no statutory or case authority for attorney fees on appeal, [(2)] was not part of a post-trial motion and [(3)] was not timely filed in accordance with any agreement of the parties or [c]ourt[-]ordered extension of time."

As for the timeliness of its filing, Body Shop made the following one-paragraph statement:

> "[Body Shop's] [m]otion for [a]ttorney [f]ees [p]ost-[t]rial and on [a]ppeal was filed on September 11, 2006, the extended deadline for filing [p]ost-[t]rial motions and thus was timely. Furthermore, this [c]ourt (and others) have found appellate fee petitions (in the trial court) filed even after a notice of appeal (or even the appeal) to be timely."

Body Shop then goes on to cite the following four cases: In re Marriage of Legge, 111 Ill. App. 3d 198, 443 N.E.2d 1089 (1982); In re Marriage of Schweihs, 272 Ill. App. 3d 653, 650 N.E.2d 569

- 27 -

(1995); In re Marriage of Giammerino, 94 Ill. App. 3d 1058, 419 N.E.2d 598 (1981); and F.H. Prince & Co. v. Towers Financial Corp., 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994).  However, Body Shop made no argument as to the relevance of these decisions in this case.  The simple fact the appellate fee petitions in those cases were allowed does not mean the trial court erred in this case.

> "Bare contentions in the absence of
> argument or citation of authority do not
> merit consideration on appeal and are deemed
> waived.  [Citation.]  A reviewing court is
> entitled to have issues clearly defined with
> pertinent authority cited and cohesive
> arguments presented (134 Ill. 2d R.
> 341(e)(7)), and it is not a repository into
> which an appellant may foist the burden of
> argument and research [citation]; it is
> neither the function nor the obligation of
> this court to act as an advocate or search
> the record for error [citation]."  Obert v.
> Saville, 253 Ill. App. 3d 677, 682, 624
> N.E.2d 928, 931 (1993).

Because Body Shop failed to present a cohesive argument, it forfeited this issue.

### III. CONCLUSION

For the reasons stated, we affirm as modified and remand to the trial court with directions to amend its judgment to add an award to Body Shop of $19,700 in storage fees for the Miller vehicle and $18,200 in storage fees for the Landau vehicle.

Affirmed as modified and remanded with directions.

MYERSCOUGH, J., concurs.

STEIGMANN, J., specially concurs in part and dissents in part.

JUSTICE STEIGMANN, specially concurring in part and dissenting in part:

I concur in the majority's conclusion as to the (1) jury instruction and (2) attorney fees and costs.

However, I respectfully dissent from the portion of the majority's opinion in which it holds that, under the facts of this case, demand alone was sufficient to cut off the accrual of storage fees.

In my view, the pertinent question in this case is whether Body Shop's damages for storage--which was the nature of the parties' original agreement--should have been tolled when Country made demand for possession, even though Body Shop had filed a separate counterclaim for those fees, simply because Body Shop also asserted lien defenses. I would hold that Body Shop's damages for such storage fees--under its counterclaim--should not have been tolled until the date Country proffered <u>legal</u> <u>tender</u> of uncontested fees or, absent tender, on the date that Country served Body Shop with notice of its complaint in replevin.

Prior to trial, the trial court granted Country's motion for partial summary judgment. The court found, in part, that Body Shop could not maintain any claim for storage charges for any vehicle after the dates that Country "tendered" payment by (1) letter in which it made demand and offered to pay the uncontested charges on 21 of the vehicles, (2) submitting the

- 30 -

check for the Jordan vehicle, and (3) verbally offering to pay the uncontested amounts due on what the parties referred to as the Rock and Kaeding vehicles. Further, the court determined that even though Country had never offered to pay any of the charges for the Miller and Landau vehicles, Country "tendered" payment when it unilaterally decided that making such an offer would have been futile. The trial court decided that the appropriate date of tender for the Miller and Landau vehicles would be 13 days from the date each vehicle had been towed--which was the average number of days between the date the other 24 vehicles were towed and the date Country supposedly tendered payment for those 24 vehicles.

Body Shop contends that the trial court erred by finding that Country had tendered payment for all 26 vehicles. Specifically, Body Shop posits that Country's mere offers were insufficient to rise to the level of tender. The majority concludes that under <u>Johnson</u>, <u>Wieland</u>, and <u>Navistar</u> an offer and demand amount to tender when, as here, the storage fees were incurred for the benefit of the lienholder. The majority is correct insofar as those cases apply to situations in which only a complaint to enforce a lien is filed or a lien is asserted as an affirmative defense and offer and demand are made when the storage of the vehicle was not the nature of the parties' original agreement. However, when, as here, a separate claim for

civil damages is filed to recover storage fees for such agreed-upon storage, proper legal tender must be proffered in order to stop the fees from accruing.  See Board of Education, Springfield Public Schools, District No. 186, Sangamon County v. McCoy, 123 Ill. App. 3d 1065, 1074, 463 N.E.2d 1308, 1314 (1984), quoting Pinkstaff v. Pennsylvania R.R. Co., 31 Ill. 2d 518, 525, 202 N.E.2d 512, 515 (1964) ("'A tender, within the legal meaning of the word, once made, stops the accrual of interest instanter'"). Thus, under the facts of this case, the trial court erred by limiting Body Shop's damages as to 25 of the vehicles because Body Shop filed a counterclaim to recover its storage fees and Country failed to proffer legal tender on those 25 vehicles.

Similar to the Johnson, Weiland, and Navistar cases, Body Shop here asserted its liens in response to Country's complaint in replevin.  However, Body Shop also filed a counter-claim, in which it asserted separate claims for recovery not based on its lien, seeking to recover civil damages for storage fees Country accrued before it properly tendered payment, given the storage was the nature of the parties' original bailment. Thus, Body Shop should have been entitled to argue that it could recover storage fees from the time each vehicle was towed until the date Country tendered payment (or until the accrual of its fees were otherwise tolled).  Nonetheless, had the nature of the parties' bailment been other than storage, such as traditional

- 32 -

repair, Johnson, Weiland, and Navistar would likely preclude recovery for the storage fees after the date on which Country made an offer and demand for each of its vehicles (less the vehicles for which Country never made an offer) because such storage fees would not have caused Body Shop any inconvenience or additional expense under such a scenario. Accordingly, the appropriate analysis in this case would be to first determine, when, if ever, Country tendered payment on each of the vehicles.

"Tender" is an unconditional offer of payment that must include the actual production of the full amount due on a particular obligation. Arriola v. Time Insurance Co., 323 Ill. App. 3d 138, 146, 751 N.E.2d 221, 227 (2001). More specifically, tender is "'[t]he actual proffer of money, as distinguished from mere proposal or proposition to proffer it. Hence[,] mere written proposal to pay money, without offer of cash, is not "tender."'" McLean v. Yost, 273 Ill. App. 3d 178, 180, 652 N.E.2d 426, 427 (1995), quoting Black's Law Dictionary 1315 (5th ed. 1979). Even an offer to pay by check is not "legal tender" when an objection to such tender is made. Margulus v. Mathes, 339 Ill. App. 497, 500, 90 N.E.2d 254, 256 (1950) (actual currency is the sole medium of payment absent an agreement to the contrary).

Country offered to settle its account with Body Shop as to the Jordan vehicle by producing a check for $412.50. Body Shop accepted this check on February 4, 2000, and later cashed

it.  This check became "legal tender" at the time (1) Country presented it to Body Shop as payment and (2) Body Shop received it as a medium of payment it was willing to accept based on the parties' prior dealings.  Accordingly, Country tendered payment on the Jordan vehicle on February 4, 2000.

Country offered to settle its accounts with Body Shop as to the vehicles upon which it purported to have tendered payment by letter on various dates between March 2000 and January 2002.  Country's offers were presented via separate letters for each vehicle, each discussing Country's willingness to pay certain otherwise agreed-upon charges less Body Shop's $50 processing fee.  Body Shop refused to accept each of Country's offers on these vehicles.

Country's mere offers to settle its disputed charges with Body Shop were insufficient to rise to the level of legal tender.  See Brown & Kerr, Inc. v. American Stores Properties, Inc., 306 Ill. App. 3d 1023, 1032, 715 N.E.2d 804, 812 (1999) ("Tender of an amount less than the creditor claims is due is ineffective when acceptance is conditioned on an admission that no greater amount is due").  Indeed, Country's letter's were merely an offer to pay the uncontested amount of its bill at some future date in the event that Body Shop agreed to accept the amount offered in each letter.  Country did not present cash or an equivalent that Body Shop was willing to accept in exchange

for release of its vehicles.  (However, a check may have been the equivalent based upon the parties' previous dealings with the Jordan vehicle.)  Accordingly, I respectfully conclude that Country did not tender payment on these vehicles.

Country offered to settle its accounts with Body Shop as to certain other vehicles by verbally expressing its willingness to pay the uncontested charges less the $50 processing fee. As verbal promises to pay cannot be "legal tender" (see McLean, 273 Ill. App. 3d at 180, 652 N.E.2d at 427 (tender is the actual proffer of money, as opposed to the proposal to offer it)), Country did not tender payment on these vehicles.

Country argued to the trial court that it somehow tendered payment to settle its accounts with Body Shop as to other vehicles even though it never formally offered to pay the bills for those vehicles.  That is, Country contended that it tendered payment when it unilaterally determined that Body Shop would not be willing to accept any offer that did not include the processing fee.  In response to the court's inquiry into how to determine a tender date for these vehicles, Country asserted that the court should average the number of days the other 24 vehicles were held until "tender" was made.  As the majority notes, the court agreed and found that tender was made on these vehicles 13 days after the date each of those vehicles were towed back to Body Shop for storage.

Because, at a minimum, tender requires that an actual offer have been made, and because Country failed to make any offer as to these vehicles, Country did not tender payment on these vehicles either.

Body Shop further contends that the trial court erred by limiting its storage fees to the date that Country offered to pay its bill on each individual vehicle. I would agree with Body Shop as to 25 of the vehicles because, as previously discussed, tender was not made on those vehicles. However, because Country did not tender payment, I conclude the appropriate analysis would be to next determine when, if ever, the $20-per-day storage fee was tolled.

In this type of case, similar to the situation in which postjudgment interest is tolled pending appeal by statute when a judgment debtor tenders payment to the court under the Code of Civil Procedure (735 ILCS 5/2-1303 (West 2000)), tender of uncontested charges should likewise stop storage fees from accruing. See Kramer v. Mt. Carmel Shelter Care Facility, Inc., 322 Ill. App. 3d 389, 392, 750 N.E.2d 757, 760 (2001) (citing section 2-1303 of the Code of Civil Procedure). For instance, had Country presented Body Shop with a check (a medium of ex-change Body Shop had recently accepted for payment of the Jordan vehicle) for the amount of the uncontested charges on each vehicle--as opposed to a letter indicating its intent to tender

payment--Body Shop's recovery for storage fees would be limited to the date that such payment was tendered. Given the record in this case, the trial court erred by limiting Body Shop's storage fees to the date Country offered to pay its bill on all the vehicles (with the exception of the Jordan vehicle). (As previously stated, Country tendered payment for the Jordan vehicle on February 4, 2000.)

Nevertheless, the question remains, at what point, if ever, does the "meter" stop running on a per-day storage fee when a party's offer to recover its vehicles falls short of tender. This appears to be an issue of first impression in Illinois. Considering the interests of both parties, I would conclude that absent tender, the storage fees stop accruing on the date that the vehicle's owner serves the party withholding its vehicle with its complaint in replevin. While I recognize that selecting this point may seem somewhat arbitrary, in a case such as this the fees must stop accruing at some point. Absent legal tender-- which, as previously explained, would stop the storage fees from accruing--service of the complaint in replevin is the most appropriate point. Otherwise, the party storing the vehicles would have the perverse incentive to prolong the litigation to continue accruing fees. For example, if Body Shop had demanded excessive fees (say, $4,000 for each vehicle) from Country, it would be intolerable to require Country to either pay the exorbi-

tant fees or to simply watch as litigation proceeded as the meter kept on ticking. However, Country also had the ability, and, according to the majority, the resources, to stop the fees from accruing at its discretion by simply paying the uncontested charges--that is, by proffering legal tender--at the time the disagreement over the additional $50 fee arose.

The majority claims that, while Body Shop's decision to retain the vehicles after Country made demand for them was "legally legitimate," its decision "was not a practical one considering (1) Body Shop did not need to worry about Country being 'judgment proof' and (2) the small amount of money (both disputed and undisputed) at issue when Country demanded the return of its vehicles." Slip op. at 16. I do not believe either point is relevant to the analysis. However, even if these points were relevant, Body Shop had no way of knowing the type of financial condition Country was in at that time. Indeed, the fact that it was unwilling to pay what the majority describes as a "small amount of money" would more likely indicate to a small business owner that Country was not in the best financial condition.

Accordingly, as to each of the 25 vehicles that Country did not tender payment, I would hold that Body Shop's storage fees were tolled on the date Country served Body Shop with its complaint in replevin.