2026 IL App (1st) 241028-U

FIFTH DIVISION
March 13, 2026

No. 1-24-1028

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| BMO HARRIS BANK N. A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2019 L 050049 |
| | ) | |
| DISTRICT RECOVERY, INC., | ) | The Honorable |
| | ) | Daniel P. Duffy and |
| Defendant and Counterplaintiff-Appellant. | ) | Michael F. Otto |
| | ) | Judges Presiding. |

JUSTICE WILSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court is affirmed in part regarding the granting of summary judgment for storage fees for the 2018 Wabash trailer and reversed in part regarding storage fees for the 2017 Volvo tractor. Because District Recovery had a valid possessory lien for storage fees pursuant to the Small Amount Act for the 2017 Volvo tractor, it is entitled to a lien of $2,000 for storage fees for the tractor, but due to the faulty notice, the same cannot be said regarding the storage fees for the trailer.

¶ 2    This case is about towing and storage fees for a 2017 Volvo tractor and 2018 Wabash trailer

(tractor-trailer) that was relocated after trespassing in the parking lot of a Circle K truck stop in

Bridgeview, Illinois. Defendant and Counterplaintiff-Appellant, District Recovery, Inc. is a

licensed Cook County vehicle relocator that had a contract with the Bridgeview Circle K to relocate unauthorized vehicles from the Circle K's property. Plaintiff and Counterdefendant-Appellee, BMO Harris Bank N.A. (BMO) is a national banking association that provides financing for commercial vehicles including the tractor-trailer at issue in this matter.

¶ 3                                    I. BACKGROUND

¶ 4      On October 17, 2018, the Bridgeview Circle K contacted District Recovery because a tractor-trailer was trespassing in its parking lot. On the same day, District Recovery relocated the tractor-trailer to its secured storage lot as provided by the signs posted in the parking lot warning that unauthorized vehicles would be towed by District Recovery to its place of business in Justice, Illinois. The signs stated that there was a $700 towing fee and $140 per day storage fee for each relocated and stored heavy-duty unit.

¶ 5      The tractor-trailer consisted of a 2017 Volvo truck tractor (VIN 4V4NC9EH9HN980024) and an attached 2018 Wabash 53-foot trailer (VIN 1JJV532D7JL046716). At the time of the relocation, BMO Harris Bank (BMO) was the owner of the tractor and the first lienholder for the trailer. Both the tractor and trailer were registered in the state of New Jersey.

¶ 6      After securing the tractor-trailer at its facility, District Recovery called the Illinois State Police and requested information about the owner of the tractor-trailer. The State Police incorrectly informed District Recovery that DLT Transport, LLC (DLT) was the tractor-trailer's owner and provided no lienholder information. District Recovery also discovered a binder in the cabin of the tractor with various documents, including a New Jersey registration card listing BMO as the owner of the tractor.

¶ 7      The record reflects that the New Jersey vehicle titles listed BMO as the "owner" of the tractor and "first lienholder" of the trailer. BMO provided financing to non-party, DLT, for DLT's

2

acquisition of the tractor-trailer. Although BMO was the tractor's owner, DLT had possession of the tractor pursuant to a finance lease. Under the relevant agreements, BMO was entitled to *possess* the tractor-trailer upon any default of DLT, including any payment default or loss of possession or control of the tractor-trailer. DLT defaulted under the agreements both for failure to make payments and for losing control of the tractor-trailer.

¶ 8     On October 19, 2018, a representative from DLT—stating that he was the tractor-trailer's owner—called District Recovery employee Tracy Thompson and attempted to pay for the tractor-trailer's release. The attempt was unsuccessful because District Recovery's credit card processing machine was not working. Thompson told the DLT representative to call back the next day but he never did.

¶ 9     District Recovery asserts that on October 27, 2018, it sent notice to BMO of its intent to salvage the tractor-trailer. District Recovery also asserts it mailed another letter with the same information around December 5, 2018. BMO disputes that the October 27, 2018, notice or the December 5, 2018, notice were ever sent or received.

¶ 10     On or around November 28, 2018, BMO's third-party recovery agent, ALS Resolvion, LLC (ALS) called District Recovery and spoke to Thompson. Thompson confirmed to ALS that District Recovery still had possession of the tractor-trailer, conveyed the towing and storage charges, and explained the process to secure the vehicle's release. BMO asserts that it affirmatively demanded possession of the tractor-trailer on or about November 28, 2018. District Recovery refused the demand and subsequent negotiations between the parties broke down. On February 19, 2019, District Recovery gave notice to BMO of its intention to sell the tractor-trailer at public sale.

¶ 11     After receiving notice of the impending sale, BMO filed suit seeking replevin of the tractor-trailer and to enjoin the public sale. On February 27, 2019, the parties, through counsel, appeared

3

before the circuit court on BMO's previously noticed motion seeking preliminary injunctive relief. The trial court, over District Recovery's objections, granted BMO's request for possession of the tractor-trailer to allow BMO to mitigate its damages against DLT. At the same time, the trial court required BMO to post a $100,000 bond to protect District Recovery's alleged interest in the tractor-trailer and entitlement to towing and storage fees. BMO then posted the required bond and took possession of the tractor-trailer.

¶ 12    After motion practice spanning several years, BMO filed a motion for summary judgment that is the subject of this appeal. On April 29, 2024, the circuit court granted the motion for summary judgment in favor of BMO. The order entered judgment in favor of BMO on both counts I and II of the verified complaint, finding: (1) there is no genuine issue of material fact as to BMO's "superior right of possession" over the 2017 Volvo tractor and the 2018 Wabash trailer, and (2) there is no genuine issue of material fact as to BMO's entitlement to injunctive relief granting BMO possession of the tractor-trailer "free of any lien for the storage fees asserted by [District Recovery], for the reasons set forth in this court's Order of June 24, 2021[.]" Additionally, after construing certain of BMO's filings as a "Motion to Confess Judgment pursuant to 735 ILCS 5/2-1301(c)" the circuit court entered judgment on District Recovery's amended counterclaim in favor of District Recovery and against BMO in the amount of $700 for towing fees. District Recovery timely appealed.

¶ 13                              II. ANALYSIS

¶ 14                         A. Standard of Review

¶ 15    In all respects our standard of review in this matter is *de novo*. We review a circuit court's summary judgment decision using the *de novo* standard of review. *Direct Auto Ins. Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. We review *de novo* a circuit court's judgment on an action of

4

replevin. *Malek v. Gold Coast Exotic Imports*, LLC, 2018 IL App (1st) 171459, ¶ 14 ("Because the action of replevin is a strictly statutory proceeding, our review of the trial court's judgment is *de novo*."). To the extent our decision rests on questions of statutory construction, or review is *de novo. Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005). Finally, we review *de novo* a permanent injunction where, as here, the order involves a question of law. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 22.

¶ 16                                                    B. Due Process

¶ 17    First, District Recovery argues the circuit court violated its due process rights by awarding BMO physical possession of the tractor-trailer on February 27, 2019, over its objection and "without a hearing" or a determination as to which party had the superior right to possession. In particular, District Recovery asserts that the February 27, 2019, order did not comply with the requirements of the Illinois Replevin Act. 735 ILCS 5/19 101, *et seq.* (West 2018).

¶ 18    To support its due process argument, District Recovery relies on *Fuentes v. Shevin*, 407 U.S. 67 (1972) and *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School Dist. No. 189 Financial Oversight Panel*, 178 Ill. 2d 399 (1997). In *Fuentes*, the Supreme Court upheld the long-established constitutional principle that before a person can be deprived of their property interest by government action, they are entitled to notice and an opportunity to be heard. 407 U.S. 67, 80 (1972). Similarly, in *East St. Louis Federation of Teachers*, our supreme court held that elected school board members must receive notice and a hearing before they can be deprived of their property interest in their office. 178 Ill. 2d at 415.

¶ 19    However, both cases are readily distinguishable from the present matter. In *Fuentes*, the Supreme Court found that two state statutes violated the Fourteenth Amendment by allowing a private party, without hearing or prior notice to another party, to obtain a prejudgment writ of

5

replevin through an *ex parte* application to a court clerk with no judicial involvement. In *East St. Louis Federation of Teachers*, the State Board of Education Financial Oversight Panel did not provide written notice, nor did it conduct any hearings, before terminating the school board members. Here, unlike *Fuentes* and *East St. Louis Federation of Teachers*, there was notice of the replevin action and a judicial hearing. Moreover, when the circuit court entered the order granting BMO's turnover request the court also required BMO to post a $100,000 bond to protect District Recovery's property interest. When the circuit court entered the order, District Recovery alleged BMO owed approximately $26,000 in towing and storage fees. Accordingly, the bond amount, together with the notice and hearing, were sufficient to protect District Recovery's alleged property interest. We find District Recovery did not suffer any violation of its right to constitutional due process under state or federal law.

¶ 20                                C. Mootness

¶ 21    Next, District Recovery argues that the circuit court erred in entering summary judgment in BMO's favor on both counts of the complaint because the counts were "moot" after the February 27, 2019, order gave BMO "all its requested relief." BMO responds that, although District Recovery cites several cases to support its mootness argument, none of the cited cases involve an ongoing dispute about whether a party is entitled to recover under a bond. See *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 60-61 (1st Dist. 2005) (finding that rescission of challenged public contract mooted dispute over awarding of that contract); *Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 124-25 (1st Dist. 1996) (finding that cancellation of event that was subject of preliminary injunction mooted appeal from granting of that injunction); *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 744 (1st Dist. 2009) (finding that the circuit court properly dismissed a claim for permanent injunction when the party

seeking the injunction failed to request a temporary injunction at the prior relevant time). Unlike the cited cases where the circuit court orders were deemed moot, here District Recovery's counterclaims alleging damages for unpaid towing and storage fees remained unresolved at the time the circuit court issued its summary judgment decision. Accordingly, the circuit court's summary judgment decision was not barred by mootness.

¶ 22                    D. Circuit Court's "*Sub Silencio*" Ruling

¶ 23    District Recovery argues that the circuit court erred in its April 29, 2024, summary judgment order by "*sub silencio*" ruling against its first two affirmative defenses and counterclaim. In particular, District Recovery asserts that the circuit court erred by "very belatedly" declaring as to the Count I replevin claim that BMO had a superior right to the possession of the tractor-trailer, and declaring as to the Count II injunction claim that BMO's possession was free of any storage lien. District Recovery points to the fact that BMO "never pled any claim for affirmative declaratory relief" as the reason that the summary judgment ruling should be reversed as a matter of law. In support, District Recovery relies on *Finn v. Project Resource Solutions, LLC*, 2024 IL App (1st ) 221016 ¶¶ 40-73, for the contention that the court cannot grant relief for unpled claims. Indeed, *Finn* states it is "a fundamental rule, with no exceptions" that a plaintiff's recovery is limited to the causes of action they plead. (Internal quotation marks omitted.) *Id.* at ¶ 54. Although the declaratory relief granted by the circuit court may have been outside of the scope of BMO's Counts I and II, it was squarely *within* the scope of the relief requested in District Recovery's own "counter claim for a determination of the towing and storage fees" owed to District Recovery under the Illinois Administrative Code. Accordingly, the circuit court did not err by making a determination of the towing and storage fees as part of its summary judgment decision.

¶ 24                          E. Confession of Judgment

¶ 25    The circuit court's April 29, 2024, summary judgment order states, "[t]hat the court construes the Plaintiff's filings made in connection with its Renewed Motion for Summary Judgment as a Motion to Confess Judgment pursuant to 735 ILCS 5/2-1301(c) as to the Amended Counterclaim filed by [District Recovery], and enters Judgment on the Amended Counterclaim in favor of [District Recovery] and against [BMO] in the amount of $700.00[.]" District Recovery argues that the circuit court erred by transforming BMO's motion papers into a confession of judgment that was not granted, accepted, or pursued by either party. BMO concedes that the circuit court's wording regarding the confession of judgment "was perhaps inartful" but counters that we review the judgment, not the reasoning, of the circuit court and may affirm on any basis in the record, regardless of the correctness of the circuit court's reasoning." See *Vulpitta v. Walsh Construction Co.*, 2016 IL App (1st) 152203, ¶ 30. Because we affirm in part and reverse in part the judgment of the circuit on separate grounds as discussed below, we need not address whether the circuit court erred in construing the renewed motion for summary judgment as a motion to confess judgment.

¶ 26                                F. Standing

¶ 27    District Recovery argues the circuit court erred by not barring BMO's claims and defenses for lack of standing. The doctrine of standing "assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). Standing requires alleged facts showing that the plaintiff suffered a distinct and palpable injury fairly traceable to the defendant's actions. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93, (1988). Furthermore, in an action for declaratory relief, "there must be an actual controversy between adverse parties, with the party requesting the declaration

possessing some personal claim, status, or right which is capable of being affected by the grant of such relief." *Id*. at 493. Finally, under Illinois law, lack of standing is an affirmative defense, therefore it is District Recovery's burden to plead and prove that BMO does not have standing. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010).

¶ 28    District Recovery makes separate standing arguments regarding the tractor and trailer portion of the vehicle because BMO owned the tractor and was a lienholder of the trailer.

¶ 29                                    1. *Standing as Owner of Tractor*

¶ 30    District Recovery argues that BMO "never had standing to allege claims or to raise defenses under Small Amount Act's section 1.5 based on its ownership of the tractor" because section 1.5 only provides for notices to vehicle lienholders, not owners. Section 1.5 requires towing companies to provide written notice to the "lienholder of record prior to the assessment and accrual of [storage] fees." 770 ILCS 50/1.5(a) (West 2018). District Recovery's second affirmative defense is that because BMO's claims are based on statutes requiring notice only to lienholders, and BMO was the admitted owner of the tractor, its claims only apply to the trailer.

¶ 31    BMO concedes that it was the owner of the tractor, and argues that District Recovery was nevertheless required to comply with Small Amount Act section 1.5 (770 ILCS 50/1.5(a) (West 2018)). BMO argues District Recovery was required to contact the appropriate New Jersey authority to ascertain the lienholder information for the tractor and to provide written notice compliant with section 1.5 (770 ILCS 50/1.5(a) (West 2018)). BMO states that it was the "titled owner as lessor of a finance lease" and argues that it was therefore "more like a lienholder than an owner" and should be afforded the same due process protections that the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)) provides for lienholders. In support of this argument, BMO points to a completely separate federal law, 49 U.S.C. § 30106(a), that does recognize the distinction

between a typical owner and an owner who takes title as a finance lessor. Although there are similarities between a finance lease and a lien, they are not the same. Compare Uniform Commercial Code (UCC) 810 ILCS 5/2A-103(g) (West 2024) (defining '[f]inance lease") with 810 ILCS 5/2A-103(r) (West 2024) (defining "[l]ien"). That an unrelated federal law carves out an exception for owners who lease vehicles is of no moment here. Simply put, a lessor in a financing lease agreement is not a lienholder under the Small Amount Act.

¶ 32     BMO additionally makes policy arguments for why a finance lessor is more like a lienholder, asserting that an owner who drives a vehicle has the opportunity to see the posted signs, or may call the police to report a stolen vehicle or to learn that the vehicle has been relocated, but "lienholders and finance lessors do not operate the vehicle and would not know that a vehicle was missing without notice." While there may be a valid policy argument for treating owners who are finance lessors like lienholders, we are not policymakers and we will not substitute our judgment for that of the legislature under the guise of statutory interpretation. *People v. Lewis*, 361 Ill. App. 3d 1006, 1013 (2005) ("Regardless of whether the addition of the emphasized language might be good policy, the judiciary cannot, under the guise of construing statutes, amend them to read other than as the legislature has written.").

¶ 33     Here, the plain language of the statute is clear, and we will not depart from the plain language by reading into the law an exception for owners who are finance lessors that the legislature did not express. See *James v. Geneva Nursing & Rehabilitation Center, LLC*, 2024 IL 130042, ¶ 29 (noting courts may not depart from a statute's plain language by adding exceptions, limitations, or conditions that the legislature did not express). Small Amount Act section 1.5 specifically requires notice only to lienholders and makes no reference to vehicle owners or title holders. See 770 ILCS 50/1.5(a) (West 2018). Accordingly, BMO was not entitled to receive any

10

lienholder notice under section 1.5 following the tractor's relocation, and thus District Recovery has met its burden to prove that BMO lacks standing to raise claims or defenses under the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)) as to the tractor because it was the tractor's undisputed owner. See *Lebron*, 237 Ill. 2d at 252.

¶ 34                                    2. *Standing as Lienholder of Trailer*

¶ 35    District Recovery next argues that, even though BMO was the lienholder of the trailer, BMO had only "limited standing" under Small Amount Act section 1.5 (770 ILCS 50/1.5(a) (West 2018)) as to the trailer. District Recovery concedes that, as the trailer's lienholder, BMO had standing to raise claims under Small Amount Act section 1.5 (770 ILCS 50/1.5(a) (West 2018)) regarding whether District mailed the required notices and whether District Recovery had a possessory lien superior to the Bank's. Nevertheless, District Recovery argues BMO's standing as lienholder was "limited" for a litany of reasons, including (1) BMO's alleged failure to receive the notices, (2) the mailbox rule, (3) the directory nature of the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)) notice requirements, and (4) BMO's failure to allege any "distinct and palpable injury" fairly traceable to District Recovery's actions. We will address each of these arguments in turn.

¶ 36    First, District Recovery argues that BMO did not have standing to raise defenses based on alleged notice defects because BMO alleges it never received the notices. District Recovery asserts that BMO lacks standing to complain about any defects in the notices that it purportedly never received because those defects could not have caused the Bank any "distinct and palpable injury" sufficient to convey standing. See *Glisson*, 188 Ill. 2d at 221. We construe BMO's argument that the content of the notices was defective to be an argument in the alternative. If we adopt District Recovery's reasoning, a party who disputes that a notice was ever mailed would not be permitted

11

to argue in the alternative that the notice, if it had been mailed, failed to comply with the statutory requirements for the notice's content.

¶ 37 It is axiomatic that parties are permitted to make arguments in the alternative. See *O'Donnell v. Bailey & Associates Counseling, & Psychotherapy LLC*, 2023 IL App (1st) 221736, ¶ 57 ("[A]lternative arguments are certainly permitted[.]") Accordingly, BMO has standing as lienholder to the trailer where it alleged in the alternative that if it had in fact received notices from District Recovery, those notices failed to include the "rate at which fees will be incurred" as required by Small Amount Act section 1.5(a). 770 ILCS 50/1.5(a) (West 2018) (A "corporation seeking to impose fees in connection with the furnishing of storage for a vehicle in the *** corporation's possession must provide written notice *** to the lienholder of record prior to the assessment and accrual of such fees, regardless of whether it enforces a lien under this Act. The notice shall be effective upon mailing and include the rate at which fees will be incurred[.]").

¶ 38 Second, District Recovery argues that the mailbox rule negates BMO's standing as lienholder of the trailer. District Recovery points to Small Amount Act section 1.5, which states any required lienholder notice "shall be effective upon mailing[.]" 770 ILCS 50/1.5(a) (West 2018). According to District Recovery, the question of whether it in fact mailed the notices was "conclusively answered" by testimony that the notices were emailed and mailed on October 28, 2018, and December 5, 2018, to BMO at two addresses, including its international headquarters. In particular, District Recovery asserts, "[o]nce that evidence of actual mailing was elicited, [BMO] had no standing to contest it based on [BMO]'s purported nonreceipt of those notices." Of the cases that District Recovery cites in support of its argument that BMO lacks standing because notice is perfected upon mailing, none of the cases discuss the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)), nor do they discuss standing. *Devine v. $30,700 United States Currency*,

199 Ill. 2d 142, 150-55 (2002) (holding that service of notice by mail pursuant to the Drug Asset Forfeiture Procedure Act is perfected when the notice is deposited in the mail); *Maggio v. Pollution Control Board*, 2014 IL App. (2d) 130260, ¶¶ 13-29 (2014) (holding that the notice requirements of section 39.2(b) of the Illinois Environmental Protection Act do not require that the sender obtain returned receipts in order for service to be effective). District Recovery cites no authority supporting the proposition that a lienholder lacks standing to challenge a relocator's alleged failure to comply with the notice provisions of the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)), nor are we aware of any.

¶ 39    Third, District Recovery argues that the directory nature of the section 1.5 notice requirements deprives BMO of standing as lienholder of the trailer. District Recovery contends that it was not "obligated to strictly follow Small Amount Act [section] 1.5(f)'s provisions" because the "provisions are *directory* only, *not* mandatory as a matter of law." (Emphasis in original.) This argument lacks merit. The legal distinction between directory and mandatory provisions applies only to the required conduct of government officials. *Austin Gardens, LLC v. City of Chicago Department of Administrative Hearings*, 2018 IL App (1st) 163120, ¶ 28 ("[T]he distinction between 'directory' and 'mandatory' concerns provisions directing government officials, not limits upon parties."). As none of the employees of District Recovery are government officials acting in their official capacity, the purported directory nature of section 1.5 has no bearing on this case.

¶ 40    Fourth, District Recovery argues that BMO lacks standing because it has not alleged a "distinct and palpable injury" fairly traceable to District Recovery's actions where BMO had "actual knowledge" that the tractor-trailer had been relocated. District Recovery asserts that BMO had such knowledge following Thompson's conversation with the DLT representative on October

19, 2018, and that "[a]ny gaps in that information were certainly filled in on November 28, 2018[,] through [Thompson's] telephone call with ALS[.]" It is undisputed that BMO, through it's third-party repossession agent ALS, was in direct communication with District Recovery in late November, 2018, and that BMO demanded possession while District Recovery demanded towing and storage fees. Although we can understand the argument that BMO may not have suffered a "distinct and palpable injury" from any allegedly defective notices after approximately November 28, 2018, District Recovery does not adequately explain why BMO lacks standing prior to November 28, 2018. District Recovery points to its communication with a representative of DLT, but District Recovery has not shown that DLT is an agent of BMO such that DLT's "actual knowledge" equates to BMO having adequate notice. As previously discussed, it is District Recovery's burden to prove that BMO lacks standing despite being a lienholder for the trailer who is entitled to notice under the plain language of the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)). See *Lebron*, 237 Ill. 2d at 252. Accordingly, District Recovery has failed to meet its burden to plead and prove that BMO lacks standing as lienholder of the trailer.

¶ 41                        G. Nullification of Existing Laws

¶ 42    District Recovery argues that the circuit court's summary judgment order "dismantled[,]" "invalidated" and "nullified" certain interlocking provisions of the Vehicle Code, Illinois Commerce Commission (ICC) Regulations, and Small Amount Act. District Recovery argues that, if compliance with the Small Amount Act is mandatory, the Small Amount Act is in "direct conflict" with the regulatory requirement, (92 Ill. Admin. Code § 1710.120(a) (1998)), that when a properly identified person has tendered the required payment, a relocator must relinquish possession of the vehicle. According to District Recovery, if a relocator can obtain a possessory lien only by complying with section 1.5 of the Small Amount Act, then a relocator need not release

14

a vehicle upon tender of proper payment. District Recovery contends that "the actual net result of the Summary Judgment Orders would be that relocators will be forced to forgo charging anyone for vehicle storage[.]"

¶ 43   District Recovery is asking us to construe provisions of the Vehicle Code, ICC Regulations, and Small Amount Act. We review issues of statutory interpretation *de novo* as a question of law. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). The fundamental rule of statutory construction is to determine and give effect to the intent of the legislature. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006). The best indication of the legislature's intent is the plain and ordinary meaning of the statutory language itself. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567 (2007). When the language of a statute is clear and unambiguous, we must give effect to the language without resort to other aids of statutory construction. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). Likewise, "[a]dministrative rules and regulations have the force of law and must be construed under the same standards that govern the construction of statutes." *People v. Wilhelm*, 346 Ill. App. 3d 206, 208 (2004).

¶ 44   Here, District Recovery has identified numerous sections from the Vehicle Code, ICC Regulations, or Small Amount Act that are involved in our statutory construction analysis, totaling 22 pages of text. Yet, District Recovery has not identified what specific provisions or language within those 22 pages is unclear or ambiguous, and that would in turn allow us to rely on aids of statutory construction beyond a plain language analysis. Instead, District Recovery tasks us with the job of sifting through the statute and regulations to identify the specific language leading to the alleged "direct conflict" within the regulatory scheme leading to a "cascade of absurdities and nullifications" affecting the existing laws. This court is entitled to have issues clearly defined with pertinent authority cited, and "is not a repository into which an appellant may foist the burden of

argument and research." *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). Accordingly, we do not find any of the alleged "ambiguities[,]" "conflicts[,]" "nullifications[,]" or "absurdities" within the present statutory scheme that would lead to reversal of the circuit court's summary judgment order as a matter of law.

¶ 45                     H. Possessory Lien Outside of Small Amount Act

¶ 46    District Recovery argues the circuit court erred in holding that ICC Regulation 1710.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) does not provide a possessory lien for relocated vehicles, and that District Recovery's only lien is under the Small Amount Act (770 ILCS 50/6 (West 2018)). In support of this argument, District Recovery points to Small Amount Act section 6, which expressly states that "the provisions of this Act shall be construed to create a lien in addition to, and shall not exclude, any lien which may exist by virtue of either the common law or any other statute of the State of Illinois." 770 ILCS 50/6 (West 2018).  District Recovery contends that this language "opens the door for all other applicable liens including ICC Reg. 1710.120[(a)] which provides a possessory lien to relocators particularly when total charges exceed $2000."

¶ 47    The next question, then, is whether any other applicable liens exist for relocators "by virtue of either the common law or any other statute of the State of Illinois[.]" 770 ILCS 50/6 (West 2018). Looking first to the common law, District Recovery concedes that the common law does not provide for storage charges, even under the common law garagekeeper's lien. *Kunde v. Biddle*, 41 Ill. App. 3d 223, 225 (1976) ("A garagekeeper does not create a common law lien by the mere unauthorized towing of a vehicle to a garage to repair or store the vehicle."). Accordingly, for District Recovery to avail itself of a lien other than pursuant to the Small Amount Act, District Recovery must point to other available liens by virtue "any statute of the State of Illinois." 770 ILCS 50/6 (West 2018).

¶ 48     District Recovery argues that ICC Regulation 17120.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) and Uniform Commercial Code (UCC) section 9-333(a) (810 ILCS 5/9-333(a) (West 2018)) taken together grant District Recovery a possessory lien over the tractor-trailer in addition to its lien pursuant to the Small Amount Act (770 ILCS 50/6 (West 2018)).

¶ 49     ICC Regulation 17120.120(a) states:

"Where a properly identified person has tendered payment at rates prescribed by the Commission in one of the forms specified in Section 1710.122, a relocator operating pursuant to a valid license issued by the Commission and in compliance with the Law and this Part shall be required to relinquish possession of a relocated vehicle [immediately or within a reasonable time]." 92 Ill. Admin. Code § 1710.120(a) (1998).

¶ 50     UCC section 9-333(a) defines possessory lien, stating:

"In this Section, 'possessory lien' means an interest, other than a security interest or an agricultural lien:

(1) which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(2) which is created by statute or rule of law in favor of the person; and

(3) whose effectiveness depends on the person's possession of the goods." 810 ILCS 5/9-333(a) (West 2018).

¶ 51     District Recovery contends that relocators maintain a first-priority possessory lien over vehicles they relocate. Although District Recovery cites no caselaw recognizing a lien created under ICC regulation 17120.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) or UCC section 9-333(a) (810 ILCS 5/9-333(a) (West 2018)), it contends such a lien "has force and should be recognized" thus entitling District Recovery to compensation for accrued storage fees beyond the

$2,000 limit on the lien it is entitled to under the Small Amount Act (770 ILCS 50/1 (West 2018)). BMO counters that neither ICC regulation 17120.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) nor UCC section 9-333(a) (810 ILCS 5/9-333(a) (West 2018)), contain any language expressly granting relocators a lien in addition to the Small Amount Act (770 ILCS 50/1 (West 2018)). We agree that the ICC regulation and UCC provision that District Recovery relies on do not expressly create a possessory lien in favor of relocators or any other entities. UCC section 9-333(a) (810 ILCS 5/9-333(a) (West 2018)), defines a possessory lien as an interest created by statute or rule of law. ICC regulation 17120.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) does not include the term "lien" and instead merely identifies the conditions under which, in some circumstances, a relocator is required to relinquish possession of a vehicle. Further, BMO contends that when the legislature wants to create a lien right, it does so expressly. See, e.g. 770 ILCS 5/1 (West 2018) ("Attorneys at law shall have a lien"); 770 ILCS 40/50 (West 2018) ("Agisters *** shall have a lien"); 770 ILCS 50/1(West 2018) (artisans and others "shall have a lien upon such chattel").

¶ 52    District Recovery cannot, and does not, argue that the UCC section 9-333(a) (810 ILCS 5/9-333(a) (West 2018)), and ICC regulation 17120.120(a)) (92 Ill. Admin. Code § 1710.120(a) (1998)) expressly create a possessory lien. Instead, District Recovery argues that the statute and rule together create a lien by implication. In support of the argument that it is entitled to a lien by implication, District Recovery cites cases interpreting Vehicle Code section 4-204(d) (625 ILCS 5/4-204(d) (West 2018)) governing police tows. Like ICC regulation 17120.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)), the language of section 4-204(d) (625 ILCS 5/4-204(d) (West 2018)) does not contain the term "lien" and instead identifies the conditions under which a towed vehicle must be returned to the owner or other legally entitled person. In fact, section 4-204(d) contains

language similar to ICC regulation 1710.120. Compare 625 ILCS 5/4-204(d) (West 2018) ("[A] vehicle subject to a hold order shall be released to the owner, operator, or other legally entitled person upon proof of ownership or other entitlement and upon payment of applicable removal, towing, storage, and processing charges and collection costs.") with 92 Ill. Admin. Code § 1710.120(a) (1998) ("Where a properly identified person has tendered payment at rates prescribed by the Commission *** a relocator *** shall be required to relinquish possession of a relocated vehicle[.]").

¶ 53    District Recovery relies on three cases where, it argues, this court has acknowledged the existence of a statutory lien by implication pursuant to Vehicle Code section 4-204 (625 ILCS 5/4-204(d) (West 2018)). See *Estate of James v. Tondini*, 2014 IL App (5th) 130031 ¶¶ 9-18 (holding no Vehicle Code section 4-204 lien created because the vehicle was not abandoned, lost, stolen, unclaimed, etc.); *Country Mutual Insurance Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 252 (2009) (recognizing that "collection costs" under Vehicle Code section 4-204(d) include reasonable attorney's fees); *Ally Financial Inc. v. Pira*, 2017 IL App (2d) 170213, ¶ 49 (discussing that storage fees in *Styck's Body Shop* were not awarded as part of a common-law possessory lien).

¶ 54    District Recovery's reliance on *Ally Financial* and *Styck's Body Shop* is misplaced. In *Ally Financial*, we make no finding as to whether the storage fees were part of a statutory possessory lien, and in fact we say that "the basis for the award of storage fees in *Styck's Body Shop* is unclear." *Id.* Thus, neither *Styck's Body Shop* nor *Ally Financial* support the proposition that Vehicle Code section 4-204 grants a statutory possessory lien.

¶ 55    Turning to *Estate of James v. Tondini*, there we considered whether a relocator had a lien for towing and storage of an automobile pursuant to section 4-204 of the Vehicle Code (625 ILCS 5/4-204 (West 2010)). 2014 IL App (5th) 130031. *Tondini* was a dispute over towing and storage

fees for a vehicle that belonged to a homicide victim. The day after the homicide, the sheriff's department authorized Tondini to tow the victim's vehicle from the victim's private property and impound it as part of the homicide investigation. Ultimately, Tondini filed a claim against the decedent's estate for $10,818 in towing and storage fees. On appeal, we considered whether the trial court erred in finding that a lien on the decedent's vehicle was not created pursuant to section 4-204 of the Vehicle Code (625 ILCS 5/4-204 (West 2010)). *Id.* ¶ 9. The "crux" of the appeal was determining the applicability of section 4-204(d) to the case, which turned on the question of whether the vehicle was authorized to be towed away as provided in sections 4-202 or 4-203 (625 ILCS 5/4-202 & 4-203 (West 2010)). *Id*. ¶ 11. The court found that sections 4-202 and 4-203 (625 ILCS 5/4-202 & 4-203 (West 2010)) only apply to vehicles that were abandoned, lost, stolen, unclaimed, left unattended on a highway, or other similar circumstances. After *de novo* review, we determined that none of the provisions of either section applied and as a result "section 4-204 (625 ILCS 5/4-204 (West 2010)) does not apply to allow a lien to attach to the [vehicle] for the defendant's towing and storage fees[.]" *Id*. ¶ 18. In *Tondini* we assumed that section 4-204 (625 ILCS 5/4-204 (West 2010)) could operate to allow a lien to attached for towing and storage fees, however we did not explicitly decide the issue because the vehicle did not meet the prerequisite of being a vehicle that was abandoned, lost, stolen, etc.

¶ 56    Even if *Tondini* did hold that section 4-204 of the Vehicle Code (625 ILCS 5/4-204 (West 2010)) creates a statutory possessory lien, there is a critical distinction that District Recovery does not address. *Tondini* involved a lien implied in statute. Here, District Recovery is asking us to recognize a lien implied in regulation. District Recovery cites no caselaw, nor are we aware of any, where a court has recognized a lien implied by regulation absent express authorization by statute. See *East St. Louis Federation of Teachers* 178 Ill. 2d 399, 423 (1997) ("The power to make

20

the laws is a sovereign power vested in the legislature, and this power cannot be delegated to an administrative body.") Moreover, this court has previously declined to recognize a possessory lien for towing and storage charges pursuant to a municipal code ordinance that did not expressly create a lien. *Kunde v. Biddle*, 41 Ill. App. 3d 223, 227 (1976) ("Chapter 22 of the Normal Municipal Code is a licensing ordinance and does not, by its terms, create a lien. Section 23.5-11 merely provides that parking on private property without the owner's consent is unlawful. Consequently, the defendant cannot claim rightful detention for towing and storage charges pursuant to either the Illinois statute, common law, or the Normal Municipal Code toward plaintiffs' automobiles."). Like the ordinance at issue in *Kunde*, ICC regulation 1710.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) does not by its terms create a lien.

¶ 57   Small Amount Act section 6 creates a lien "in addition to, and shall not exclude, any lien which may exist by virtue of either the common law or *any other statute* of the State of Illinois." (Emphasis added.) 770 ILCS 50/6 (West 2018). The Small Amount Act (770 ILCS 50/6 (West 2018)) by its plain language expressly recognizing other liens created by statute and does not contemplate liens created by administrative regulation.

¶ 58   To the extent that District Recovery relies on UCC section 9-333(a) (810 ILCS 5/9-333(a) (West 2018)) that argument also fails. Section 9-333(a) merely defines what a possessory lien is, and crucially, it must be "created by statute or rule of law" in order to be a valid possessory lien. 810 ILCS 5/9-333(a) (West 2018). We reject District Recovery's circular logic that UCC section 9-333(a) itself creates a possessory statutory lien.

¶ 59   Finally, District Recovery points to the Illinois legislature's declaration of policy on commercial relocation and vehicle storage, which is "to fairly distribute rights and responsibilities among vehicle owners, private property owners and commercial vehicle relocators[.]" 625 ILCS

21

5/18a-101 (West 2018). District Recovery asserts that one of its "rights" as a vehicle relocator is to retain possession of vehicles until they have been fully paid for storage fees. District Recovery, does not, however, explain why having a right to a possessory lien of up to $2,000 for storage fees pursuant to the Small Amount Act (770 ILCS 50/1 (West 2018)) is unfair, making it entitled to an implicit possessory lien of an unlimited amount. Indeed, District Recovery's position has the potential to lead to an unfair distribution of rights between vehicle owners and commercial relocators. If vehicle relocators are entitled to an unlimited possessory lien for storage fees, they would then have the right to rack up storage fees many times in excess of the vehicle's value. Therefore, the policy of fair distribution of rights that the legislature enumerated in Chapter 18A of the Vehicle Code (625 ILCS 5/18a-101 (West 2018)) does not necessarily support District Recovery's position that it is entitled to a possessory lien of an unlimited amount for storage fees. For the foregoing reasons, we hold that ICC Regulation 1710.120(a) (92 Ill. Admin. Code § 1710.120(a) (1998)) and UCC section 9-333(a) (10 ILCS 5/9-333(a) (West 2018)) do not create an implied possessory lien for relocated vehicles, and that District Recovery's only avenue for a possessory lien is pursuant to the Small Amount Act (770 ILCS 50/6 (West 2018)). Next we turn to what damages, if any, District Recovery is entitled to pursuant to this possessory lien.

¶ 60                                    I. Damages

¶ 61     District Recovery's position is that its possessory lien and resulting damages are still accruing to the present day. District Recovery acknowledges that it relinquished actual possession of the tractor-trailer pursuant to the February 27, 2019, circuit court order. However, District Recovery contends that it never voluntarily relinquished legal possession of the tractor-trailer because it objected to the order on the record, and the order itself granted BMO possession of the tractor-trailer while otherwise preserving all of District Recovery's "rights and privileges." We

agree with District Recovery that, to the extent it had a right to a possessory lien for the tractor-trailer, its right to any such possessory lien was not extinguished by the February 27, 2019, order. See *Twin Sewer & Water, Inc. v. Midwest Bank & Trust Co.*, 308 Ill. App. 3d 662, 673 (1999) ("[E]ven the involuntary relinquishment of retained materials pursuant to a court order does not result in a loss of the lien.").

¶ 62     We next consider what damages, if any, District Recovery is entitled to pursuant to the Small Amount Act (770 ILCS 50/6 (West 2018)). We consider damages for the tractor and trailer separately because the Small Amount Act section 1.5 (770 ILCS 50/1.5(a) (West 2018)) distinguishes between notice requirements for owners and lienholders, and BMO owns the tractor while it is a lienholder of the trailer.

¶ 63                              1. *Damages for Storage of Tractor*

¶ 64     As discussed above, Small Amount Act section 1.5 only requires relocators to provide notice to vehicle lienholders, not owners. Specifically, section 1.5 requires towing companies to provide written notice to the "lienholder of record prior to the assessment and accrual of [storage] fees." 770 ILCS 50/1.5(a) (West 2018). As previously discussed, BMO was not entitled to receive any lienholder notice under section 1.5 following the tractor's relocation, and thus BMO lacks standing to raise claims or defenses under the Small Amount Act (770 ILCS 50/1.5(a) (West 2018)) as to the tractor because it was the tractor's undisputed owner.

¶ 65     The question, then, is whether storage fees ever stopped accruing for the tractor or whether they continue to the present day pursuant to District Recovery's possessory lien. In either case, any such damages are subject to the $2,000 limit on damages provided by the Small Amount Act. 770 ILCS 50/1 (West 2018). BMO argues that even if District Recovery had a possessory lien, the storage charges stopped accruing long ago when BMO "demanded" possession of the tractor-

23

trailer on or about November 28, 2018.

¶ 66   In support, BMO relies on *Styck's Body Shop* for the proposition that District Recovery was not permitted to both continue to retain possession of the property pursuant to a lien and charge storage fees for holding the property after the demand was made. 396 Ill. App. 3d at 246-47. In *Styck's Body Shop*, plaintiff, an insurance company, regularly paid the Body Shop for automobile accident towing and storage of vehicles that it insured. *Id.* at 243. When the Body Shop instituted a new $50 processing fee for each vehicle, the insurance company refused to pay the new fee. *Id.* Ultimately, the insurance company filed a complaint in replevin alleging that the Body Shop unlawfully possessed 26 of its vehicles because it had either paid or offered to pay its bills for the vehicles less the $50 processing fees—offers the Body Shop refused to accept. *Id.* at 244. At trial, the insurance company presented evidence regarding payment offers or demands for return of 24 of the 26 vehicles. *Id.* at 245. For two of the vehicles, however, there was no evidence to show that the insurance company had ever made a payment offer or demand for the vehicle's return. *Id*.

¶ 67   On appeal, the Body Shop argued that it had a legal right to continued possession and accrued storage charges for all 26 vehicles. We disagreed, stating:

> "Body Shop appears to believe because it had the right to retain a vehicle pursuant to its lien, it also had the right to continue charging storage fees on that vehicle. This is incorrect. Regardless of whether Body Shop had the right to retain possession of a vehicle pursuant to a claimed lien after [the insurance company] demanded the vehicle's return, established Illinois law does not allow Body Shop a legal monetary remedy for the days it continued to retain the vehicle, regardless of the legal theory or process it used in its attempt to collect those daily storage fees." *Id.* at 246-47.

¶ 68   Here, as in *Styck's Body Shop*, BMO demanded the return of its property and District

24

Recovery refused to release the property because of a lien. As a result, District Recovery was no longer storing the property for the benefit of BMO, "but instead for its own purposes, *i.e.,* securing payment for the services it rendered." *Id.* at 249.

¶ 69    Furthermore, in *Styck's Body Shop* we held that proper legal tender of payment is *not* required to stop the accrual of storage fees. *Id.* at 251 ("Once a demand for possession is made, whether by a complaint in replevin or otherwise, and the lienholder refuses to turn over the property, the lienholder can no longer continue to accrue daily storage fees for that property."). Accordingly, District Recovery had no right to continue charging storage fees after BMO demanded possession of the tractor-trailer. If District Recovery "chose to insist upon its right of retainer, given by the law, and suffer the inconvenience of having a portion of the floor space of its garage taken up by the truck, this was its privilege, but in exercising said right of retainer we do not think that it had any authority under the law to add to the debt any charge for storage during the period the truck was so retained." *Id.* at 248 (citing *Johnson v. Throop Street Auto & Wagon Co.*, 232 Ill. App. 513, 515 (1924)).

¶ 70    District Recovery argues that, because it did not have a contractual relationship with BMO, it was free to ignore BMO's demand and keep accruing storage fees. This is so, according to District Recovery, because the cases limiting storage charges once demand is made, including *Styck's Body Shop*, arise under the common law. Common law rights and remedies, however, are in full force unless repealed by the legislature or modified by the court, and "[a] legislative intent to abrogate the common law must be clearly and plainly expressed, and such an intent will not be presumed from ambiguous or doubtful language." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518 (1997). District Recovery does not point to any language in the relevant statutes or regulations abrogating the common-law limitation on storage liens, nor are we aware of any.

¶ 71 Next, we consider the date BMO demanded possession of the tractor-trailer for purposes of stopping the accrued storage fees. BMO alleges that it demanded possession of the tractor-trailer "on or about November 28, 2018" which is 42 days after the tractor-trailer was towed on October 17, 2028. The posted storage fees were $140 per day for each relocated and stored heavy-duty unit, meaning that the accrued storage fees for the tractor would have reached $5,880 by November 28, 2018. However, it is immaterial whether BMO demanded possession a few days or even a few weeks before or after November 28, 2018, because District Recovery's possessory lien is subject to the $2,000 limit imposed by the Small Amount Act (770 ILCS 50/1 (West 2018)).

¶ 72 Accordingly, we determine that the circuit court erred in granting injunctive relief to BMO for possession of the 2017 Volvo tractor free of any lien for the storage fees asserted by District Recovery. Additionally, the circuit court erred in denying District Recovery's counterclaim for damages for storage fees for the tractor. Instead, District Recovery asserted a valid possessory lien pursuant to the Small Amount Act (770 ILCS 50/1 (West 2018)) and is therefore entitled to storage fees of up to $2,000 for the tractor.

¶ 73                           2. *Damages for Storage of Trailer*

¶ 74 Next, we consider damages for storage fees for the trailer. As previously noted, BMO was owner of the tractor but was lienholder of the trailer. Small Amount Act section 1.5 requires towing companies to provide written notice to the "lienholder of record prior to the assessment and accrual of [storage] fees." 770 ILCS 50/1.5(a) (West 2018). To assess storage fees for which BMO would have any obligation to pay, District Recovery was required by statute to provide adequate written notice. The notices that District Recovery sent were defective and did not comply with Small Amount Act section 1.5 (770 ILCS 50/1.5(a) (West 2018)) because the notices failed to include the rate at which fees will be incurred. Section 1.5 requires any relocator "seeking to impose fees

26

in connection with the furnishing of storage for a vehicle in the [relocator's] possession must provide written notice, by certified mail, return receipt requested, to the lienholder of record prior to the assessment and accrual of such fees, regardless of whether it enforces a lien under this Act. The notice shall be effective upon mailing and include the rate at which fees will be incurred[.]" 770 ILCS 50/1.5(a) (West 2018). Without adequate legal notice to BMO as lienholder of the trailer, District Recovery was not entitled to assess any accrued storage fees from BMO for the trailer. Accordingly, we affirm the circuit court in granting injunctive relief to BMO for possession of the 2018 Wabash trailer free of any lien for the storage fees asserted by District Recovery.

¶ 75                                    III. CONCLUSION

¶ 76    For the foregoing reasons, the judgment of the circuit court is affirmed in part regarding storage fees for the 2018 Wabash trailer and reversed in part regarding storage fees for the 2017 Volvo tractor. District Recovery was entitled to a lien for $2,000 for storage fees for the 2027 Volvo tractor. We enter judgment on the amended counterclaim in favor of District Recovery and against BMO in the amount of $2,000 for storage fees. We affirm the judgment of the circuit court on the amended counterclaim in favor of District Recovery and against BMO in the amount of $700 for towing fees.

¶ 77    Affirmed in part and reversed in part.